UNITED STATE DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| RAYMOND LAPOINTE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | C.A NO: 1:16-CV-10532-MPK |
| | ) | |
| SILKO MOTOR SALES, INC., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT SILKO MOTOR SALES INC.'S MOTION FOR SUMMARY JUDGMENT

### I.   SUMMARY OF FACTS

The Plaintiff, Raymond Lapointe, has brought this action for personal injuries allegedly

sustained on July 10, 2013 as a result of a fall at the Defendant, Silko Motor Sales Inc.'s, auto

dealership in Raynham, Massachusetts.  (SOF ¶1.)  At the time of the alleged fall, Mr. Lapointe

was employed by the Patriot Franchise Group d/b/a Jan-Pro Cleaning Systems (herein Jan Pro)

which had contracted with Silko Motor Sales to provide cleaning services for its facilities.  (Id.

¶¶ 2 and 3.)  Jan Pro's contract with Silko Motor Sales included: "Special Customer

Instructions" - "machine scrub all service floors 6x per week" with Silko Motor Sales providing

a degreaser for service floor cleaning.  (Id. ¶ 5.)

The franchisee of Jan Pro who was to clean the auto dealership the night of the alleged

incident could not perform its services, and unable to find a cleaning company to replace the

franchisee, Mr. Lapointe cleaned the facilities by himself.  (Id. ¶6 and 7.)

Mr. Lapointe arrived at Silko Motor Sales's auto dealership at approximately 7:00 PM.  (Id.

¶ 8.)  There are two buildings at the dealership: one for used car sales and the other for new car

sales.  (Id. ¶ 9.)  As the used car sales building was already closed, Mr. Lapointe cleaned that

building first, and at approximately 10:00 PM, he began cleaning the new car building.  (Id. ¶ 10 and 11.)

The Plaintiff first cleaned the offices of the new car building, then the auto dealership showroom, followed by the restrooms.  (Id. ¶ 12.)   After those areas were cleaned, he intended to dispose of the trash he had collected in a dumpster outside the building.  (Id. ¶ 13.)   Mr. Lapointe was walking towards the back doors to push the button to open the doors when he fell. (Id.)  He testified he lost his balance and fell while he was walking around the pallet.  (Id. ¶ 14.) After his fall, Mr. Lapointe observed oil on the floor of the service department floor near the pallet of engine parts.  (Id. ¶ 15.)  He described an approximately 8 inches in diameter and 1/16 inch deep puddle or coating of oil or transmission fluid on the floor.  (Id. ¶ 16.)  He did not observe fluid dripping from the parts on the pallet, nor does he know how long the oil was present on the floor before he fell.  (Id. ¶ 17 and 18.)

After he fell, Mr. Lapointe took out the trash and cleaned the service area floor at the new car building.  (Id. ¶ 19.)  He cleaned the oil from the floor with an auto scrubber machine.  (Id. ¶ 20.)  Mr. Lapointe's employer, Jan Pro was responsible, pursuant to its contract with Silko Motor Sales, to clean the area where the Plaintiff fell. (Id. ¶ 21.)

An auto scrubber machine was used when cleaning the service area floor which utilizes a cleaning solution, rotating brush, and vacuum.  (Id. ¶ 22 and 23.)  In addition to the auto scrubber, pursuant to the contract, a degreaser was used to clean the service department floors. (Id. ¶ 24.) Mr. Lapointe had cleaned Silko Motor Sales' dealership facilities previously without assistance and testified typically there was oil and grease everywhere in the service area.  (Id. ¶

25 and 26.)[1]  The lights were on in the service department as he was cleaning and he described the lighting as excellent.  (Id. ¶ 27.)

Mr. Lapointe never reported this incident to Silko Motor Sales.  (Id. ¶ 28.)  Silko Motor Sales did not receive notice of his fall until it was served with a copy of the Complaint in April of 2016.  (Id. ¶ 29.)

## II.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), "[a] party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Entry of summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish that existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.*

---

[1] *Q.  Now, in the past, when you would use the auto scrubber on the floor, would you clean up spots or oils or other transmission fluids?*

*A.  Absolutely. You got to understand, this entire floor, there was oil and grease everywhere. People had been working all day long. This particular one was a puddle because the engine had leaked. But typically there would be oil and grease everywhere. And the machine with the chemical that they purchased, it was a very good chemical, and   the machine did a very good job, but I hadn't gotten   to    that point yet. (Exhibit B – 62:3-16.*

## III.   ARGUMENTS

A. <u>The Defendant owed no duty to the Plaintiff, an independent contractor, whose injuries resulted from an inherent risk of improving a condition the plaintiff was hired to correct.</u>

As the Plaintiff was employed by Jan Pro, who had a contractual obligation to clean the service department floors, he cannot maintain this action. It has long been the law in the Commonwealth that where an independent contractor is retained to perform certain work, and the employer retains no control over the manner in which the work is to be done, "it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk and bearing and distributing it." *Corsetti v. Stone Co.*, 396 Mass. 1, 10, 483 N.E.2d 793, 798 (1985) citing Restatement (Second) of Torts § 409 comment b (1965).

The Supreme Judicial Court held that the duty and standard of care owed to independent contractors was the same owed to any lawful visitor to the premises. *Poirier v. Town of Plymouth*, 374 Mass. 206, 228, 372 N.E.2d 212, 227 (1978). The duty and standard of care owed by the property owner to an employee of an independent contractor would be the same as that owed to all of the lawful visitors on the premises "reasonable and appropriate under all circumstances. *Id.* at 227-228.

The standard set forth in *Poirier* did not, however, preclude employers of independent contractors from allocating risk so that one who employs an independent contractor will not be liable for injuries to the employee of the independent contractor when such injuries are inherent to the work being performed. *Id.* Those risks which are inherent are considered "ordinary risks" whereas "extraordinary risks" are created by the negligence of the party who employed the independent contractor. *Id.* In differentiating between "ordinary" and "extraordinary" risks, the

SJC stated that ordinary risks include those that are "truly obvious risks, knowingly and voluntarily undertaken." *Id.* at 226-227.

The court recognized that "there are instances of hazardous employment where an independent contractor is engaged to do a particular task which presents inherent risk to the employees of that contractor." *Id.* A repairman should not recover for injuries resulting from an inherent risk of improving the condition they were hired to correct. *West. v. United States*, 361 U.S. 118 (1959), *Hill v. Texaco,* 674 F.2d 447 (5th Cir.1982); *Peters v. Titan Nav. Co.,* 857 F.2d 1342 (9th Cir.1988).

The Plaintiff, in this matter, was the employee of an independent contractor. He was at the Defendant's premises pursuant to a written agreement that required that the service department floors for the auto dealership be cleaned. An auto scrubber with a degreaser was utilized for the purposes of cleaning fluids from the floor. From his prior visits to Silko Motor Sales, Mr. Lapointe was aware that such fluids could be found anywhere, if not everywhere, on the service department floor.

The Plaintiff in this matter was injured by a condition he was hired to correct. His employer was under a contractual obligation to clean fluids from the service department floor, and therefore, slipping on such fluids was an inherent risk in the work performed by Mr. Lapointe for Silko Motor Sales. The contractual agreement between the Plaintiff's employer and Silko Motor Sales clearly delineates the responsibilities of Jan Pro and its employees and allocates the risks associated with cleaning of what was unquestionably a known condition to the Plaintiff.

Mr. Lapointe acknowledged it was his responsibility to clean up the fluid that allegedly caused him to slip, and in fact, he did clean it after his fall. While Mr. Lapointe alleges the

defect was hidden by a pallet stocked with auto parts, he acknowledges looking at the button to open the door rather than the floor as he walked in the well-lit service department.

The facts presented to the Court in this matter are in accord with the ordinary/inherent risks referenced in *Poirier*. The hazard of oil or other fluids being present on the service department floor was obvious and known to the Plaintiff. By way if its contract with Silko Motor Sales, Jan Pro assumed the responsibility for cleaning the service room floor to remove such fluids. Mr. Lapointe, performing this task on behalf of his employer, cannot now argue the hazards or dangers involved were extraordinary as it was plainly known to him by the terms of the contract and by his experience.

B.   The Defendant has no duty to warn of known or obvious dangers or risks.

A landowner has no duty to warn if the risk is obvious to persons of average intelligence. *O'Sullivan v. Shaw*, 431 Mass. 201, 204, 726 N.E.2d 951, 954–55 (2000) (The open and obvious danger rule precludes any duty to warn a plaintiff not to dive headfirst into the shallow end of a swimming pool. "Plain common sense, bolstered by the weight of authority in other jurisdictions where this issue has been addressed, convince us that this conclusion is indisputably correct.") See also *Young v. Atlantic Richfield Co.*, 400 Mass. 837, 512 N.E.2d 272, 276 (1987) (holding that the owner of a gasoline service station was under no duty to post a sign warning its patrons to be aware of other automobiles in the area.) and *Lyon v. Morphew*, 424 Mass. 828, 833, 678 N.E.2d 1306, 1310 (1997) (The dangers of working on a roof are obvious.)

The Defendant contends there was no duty to warn as the presence of oil on the service department floor was well known to the Plaintiff as evidenced by his deposition testimony and the terms of the contract. Any such warning would have been superfluous, for a person already

6

aware of the potential risk. *Dos Santos v. Coleta*, 465 Mass. 148, 154, 987 N.E.2d 1187, 1192 (2013).

C. <u>The Plaintiff spoliated evidence by removing the fluid from the service department floor thereby prejudicing the Defendant.</u>

The doctrine of spoliation "is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results." *Keene v. Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 234, 786 N.E.2d 824, 832 (2003). See *Kippenhan v. Chaulk Servs., Inc.*, 428 Mass. 124, 127, 697 N.E.2d 527, 530 (1998) (negligent destruction of evidence is sufficient to constitute spoliation).

The duty to preserve evidence arises at the time the party is aware that the evidence might be relevant to potential litigation. *Keene*, 439 Mass. at 234.

Sanctions for spoliation should be tailored to remedy the unfairness occasion by the spoliation. *Fletcher v. Dorchester Mut. Ins. Co.*, 427 Mass. 544, 551, 773 N.E.2d 420 (2002).

Following his slip and fall, Mr. Lapointe cleaned the service department floor removing the alleged fluid leak which caused his fall. The Plaintiff did not notify the Defendant of the incident until the filing and service of the Complaint in April 2016.

These actions by the Plaintiff precluded the Defendant from conducting any contemporaneous investigation into the incident. It was three years after his fall that Mr. Lapointe provided notice to Silko Motor Sales by serving his Complaint. Given the service department for Silko Motor Sales services numerous vehicles on a daily basis and said work involves the removal and/or replacement of parts as well as the draining of fluids, it would be impossible, three years later, Silko Motor Sales's employees to have a recollection of the work it performed in the service department or the existence of fluids on the floor of the new car

building's service department the day of Mr. Lapointe's fall.  Inquiry was made in this regard and as one would expect none of the technicians or management of Silko Motor Sales could recall details of that day.

By removing the alleged defect and failing to notify Silko Motor Sales of the incident, the Plaintiff has significantly prejudiced the Defendant.  Consider that should this matter proceed to trial, Silko Motor Sales will have been precluded from offering direct eyewitness testimony as to the condition of the service department floor at the time of the incident.  Rather, Silko Motor Sales will be required to rely merely upon its policies and procedures concerning the clean-up of fluid leaks in the service department.

While the Defendant appreciates Mr. Lapointe may not have understood the significance of retaining the evidence at the time of his fall, the prejudice to Silko Motor Sales is such that dismissal would be an appropriate sanction where the spoliation is compounded by the Plaintiffs failure to give immediate notice of his fall and injuries.  This failure has effectively precluded the Defendant from contesting the existence of the alleged fluid that caused the Plaintiff to fall.

## IV.   CONCLUSION

Wherefore, the Defendant, Silko Motor Sales, Inc. requests summary judgment enter in its favor and the Plaintiff, Raymond's, Complaint be dismissed.

/s/ John F. Gleavy

Francis J. Lynch, III, BBO 308 740
John F. Gleavy, BBO 636 888
Jgleavy@lynchlynch.com
Lynch & Lynch
45 Bristol Drive
South Easton, MA  02375
(508) 230-2500

8

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants upon receipt of notification of same from the court.

/s/ John F. Gleavy

John F. Gleavy, BBO 636 888
Lynch & Lynch
45 Bristol Drive
South Easton, MA  02375
(508) 230-2500