UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAYMOND LAPOINTE,
    Plaintiff,

v.                                      CIVIL ACTION NO. 1:16-cv-10532-MPK

SILKO MOTOR SALES, INC.,
    Defendant.

MEMORANDUM AND ORDER ON DEFENDANT SILKO MOTOR SALES INC.'S
MOTION FOR SUMMARY JUDGMENT (#26).

KELLEY, U.S.M.J.

I. Introduction.

Plaintiff Raymond Lapointe brought this action on the basis of diversity jurisdiction against defendant Silko Motor Sales, Inc. for personal injuries allegedly sustained when he fell while cleaning the floor of the service area in Silko's auto dealership in Raynham, Massachusetts on July 10, 2013. (#1.) Lapointe brings two claims against Silko: negligence, *id.* at 2-3, and failure to warn, *id.* at 3-4. Silko filed a motion for summary judgment on both claims. (#26.) Lapointe opposed the motion (#30) and Silko replied (#34). Silko's motion is GRANTED, because Silko was not negligent in failing to remedy the spill nor did it have a duty to warn plaintiff of the spill.

II. Facts.

The facts are uncontested except as noted. At the time of the incident, Lapointe was employed by the Patriot Franchise Group, d/b/a Jan-Pro Cleaning Systems. (#28 ¶ 2.) Lapointe said in his deposition that he was a regional manager, and his responsibilities included selling franchises to prospective buyers, training franchisees, inspecting work that was performed by franchise owners, and occasionally, when "somebody is out sick," cleaning buildings. (#28-2 at 15-16.)

Jan-Pro had a written agreement with Silko to provide cleaning services in Silko's auto dealership. (#28 ¶ 3; #28-3 (agreement).) Under the agreement, Jan-Pro was required to clean the service area floor, where Lapointe fell, six times per week, using Silko's degreaser. (#28 ¶¶ 4-5.)

A franchisee of Jan-Pro was supposed to clean Silko's dealership the night of the incident, but was unable to do it, and so Lapointe cleaned the premises himself, alone. *Id.* ¶¶ 6-7. Lapointe had cleaned Silko's facility alone on previous occasions. *Id.* ¶ 24. Lapointe began the job around 7:00 p.m., cleaning the used car building first, then the offices, showroom, and restrooms of the new car building. *Id.* ¶¶ 8-12. The slip and fall occurred when Lapointe was walking around a pallet of engine parts in the service area, in order to reach a button that opened a service area garage door, so he could dispose of trash in a dumpster. *Id.* ¶¶ 13-14.[1] He testified in his deposition that he had not yet cleaned the floor of the service area at the time he fell. (#28-2 at 61.) He said that typically there was "oil and grease everywhere" on the service department floor. *Id.* at 62.

---

[1] At his deposition, Lapointe said that he "landed right on his knee" after the fall. (#28-2 at 58.) He said that he had an operation on the knee, and a doctor had told him he would require a knee replacement in the future. *Id.* at 72.

After falling, Lapointe saw oil on the service department floor near the pallet where he lost his balance. (#28 ¶ 15.)[2] He described a puddle or coating of oil or transmission fluid on the floor approximately eight inches in diameter and 1/16 of an inch deep. *Id.* ¶ 16. He never observed fluid drip from the pallet of parts. *Id.* ¶ 17.

After the fall, Lapointe "completed cleaning the facilities by taking out the trash and cleaning the service area floor for the new car building." *Id.* ¶ 19. Lapointe cleaned the oil in which he had fallen on the service department floor with an auto scrubber machine. *Id.* ¶ 20, #33 ¶ 9. Lapointe had used the auto scrubber "in the past to clean oils or transmission fluids" on the service department floor. *Id.* ¶¶ 25-26.

Although the parties agreed on Silko's L.R. 56.1 statement of material facts (#28), Lapointe filed his own statement in which he noted six additional facts. (#32.) He stated that it was unusual for Jan-Pro (and therefore Lapointe) to clean service department floors when under contract with car dealerships; Jan-Pro used a cleaning detergent that was supplied by Silko to clean the floor and had "to follow Silko's direction on the order in which Jan-Pro completed its cleaning obligations"; Lapointe had never encountered stored automotive parts, such as engines and transmissions, as he did on the night in question, and he was unaware of the risk that such parts might leak pools of slippery fluid; Silko's in-house policy "was to ensure that all such automotive parts were fully drained before placing them in the back area in storage for disposal"; and "all spills during fluid drainage were to be covered by absorbent mats while there was no policy to remedy spills that resulted from leaks during storage." (#32 at 1-2.)

---

[2] At the time of Lapoint's fall, the lights of the service department were on. *Id.* ¶ 27. He described the lighting as "excellent." *Id.*

3

Defendant disputes some of these additional facts, denying that Jan-Pro was required to follow defendant's direction on the order in which it completed its cleaning obligations and denying that it was the defendant's policy to ensure that automotive parts were fully drained before placing them in the storage area for disposal. (#34 at 1-3.)[3]

Lapointe did not report the incident to Silko, which did not receive notice of his claim until served with the complaint in this matter. (#28 ¶¶ 28-29.) None of Silko's automotive technicians who were employed at the time of the incident had any memory of any spills on the floor on the date of Lapointe's alleged fall. *Id.* ¶ 31.

III. Legal Standard.

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotation marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a

---

[3] As will be seen *infra*, the facts that plaintiff added are not germane to the court's decision. The fact that it was unusual for Jan-Pro to clean service department floors does not matter. The contract between Jan-Pro and Silko provided for the floors to be cleaned six days a week, *see* #28-3 at 8, and Lapointe had cleaned the floors before. Further, Lapointe's assertions that he had never encountered stored automotive parts in the few times he had cleaned the premises, and that Silko had policies concerning putting mats down for leaks or draining auto parts, are irrelevant, since Lapointe testified that there typically was oil and grease everywhere on the floor, and there is nothing in the record to suggest that Lapointe expected all the hazardous oil and grease on the floor to be covered with mats.

reasonable jury could resolve the point in favor of the nonmoving party." *Rojas-Ithier*, 394 F.3d at 42.

The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulville v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). "Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (internal quotation marks and citation omitted). In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006).

## IV. <u>Discussion</u>.

A. <u>Defendant did not violate any duty of care or duty to warn</u>.

Because this case is founded on diversity jurisdiction, "state law supplies the substantive rules of decision." *Potvin v. Speedway LLC*, 891 F.3d 410, 414 (1st Cir. 2018) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)). Plaintiff claims defendant was negligent by "failing to keep the Premises in a condition, which was reasonably safe for those reasonably foreseen to be present, such as Plaintiff" and breached its duty to warn plaintiff of an inherently dangerous condition on the property by failing to warn him of the spill. (#1 ¶¶ 13, 17-18.)

"To prevail on a claim for negligence under Massachusetts law, 'a plaintiff must carry the burden of proving the elements of duty, breach, causation, and damages.'" *Potvin*, 891 F.3d at 414 (quoting *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014)). While "the issues of breach,

5

causation, and damages typically are determined by a factfinder [. . .] the existence vel non of a legally cognizable duty is typically a question of law, with which the court must wrestle." *Id.* (citing *O'Sullivan v. Shaw*, 726 N.E.2d 951, 954 (Mass. 2000); *Davis v. Westwood Grp.*, 652 N.E.2d 567, 569 (Mass. 1995)) (internal citation omitted).

Plaintiff argues vigorously that his claims should be analyzed under the long-established rule set out in *Poirier v. Town of Plymouth*, 372 N.E.2d 212, 227 (Mass. 1978), in which the Massachusetts Supreme Judicial Court (SJC) held that the duty of care owed by a property owner to an employee of an independent contractor is the same as that owed to all lawful visitors on the premises. (#31 at 4-5.) That duty has been described as including "an obligation to maintain the premises in a reasonably safe condition and to warn of dangers of which [the landowner] was aware or reasonably should have been aware." *Farren v. General Motors Corp*, 708 F. Supp. 436, 443 (D. Mass. 1989) (citing *Poirer*, 372 N.E.2d at 227).

Under this rule, the property owner "must take those steps to prevent injury that are reasonable and appropriate under all the circumstances," *Poirier*, 372 N.E.2d at 227, but has no duty to warn of obvious dangers. *Young v. Atlantic Richfield Co.*, 512 N.E.2d 272, 276 (Mass. 1987), *cert. denied*, 484 U.S. 1066 (1988). *See Potvin*, 891 F.3d at 414 ("Under Massachusetts law, property owners are relieved of any duty to warn of open and obvious conditions, including those that present open and obvious dangers, since it is logical to expect that a lawful visitor exercising reasonable care for her own safety would not fall victim to such 'blatant hazards.'") (citations omitted); *Lyon v. Morphew*, 678 N.E.2d 1306, 1310 (Mass. 1997) (granting summary judgment for directors of hospital engineering department in action brought by injured employee of independent contractor who fell off roof, because "[t]he dangers of working on a roof are obvious."); *O'Sullivan v. Shaw*, 726 N.E.2d 951, 956 (Mass. 2000) (affirming grant of summary

judgment for defendant where plaintiff was injured while diving into the shallow end of defendant's pool, where "the open and obvious danger rule … operates to negate the existence of a duty of care"); *Diodato v. United States*, 972 F.2d 337 (Table), 1992 WL 180699, at *3 (1st Cir. July 31, 1992) (holding that summary judgment was appropriate under *Poirier*, where danger of power lines to worker who was electrocuted was open and obvious).

In this case, the danger posed by the oil on the floor was objectively open and obvious. Plaintiff described an eight-inch puddle on a service department floor in an area that was well-illuminated. The puddle was both a visible and predictable danger to a person of reasonable intelligence, just as working on a roof would be, *see Lyon*, or diving into the shallow end of a pool, *see O'Sullivan*, or stepping on grooves that were put in for safety reasons at a gas station, *see Potvin*. Other courts have found hazards in similar situations to be open and obvious. *See, e.g.*, *Brooks v. Bruce Campbell Dodge, Inc.*, No. 293039, 2010 WL 3719228, at *1 (Mich. Ct. App. Sept. 23, 2010) (granting summary judgment for defendant where plaintiff slipped in the service area of an auto dealership: "A reasonably prudent person would have looked before stepping out of the vehicle, and considering the size of the puddle—approximately two small buckets of water—in doing so, would have easily discovered the condition. Therefore, there is no question of fact that the condition was open and obvious."); *Brown v. Whirlpool Corp.*, No. 9-04-12, 2004 WL 2260546, at *3 (Ohio Ct. App. Sept. 27, 2004) (granting summary judgment to defendant where plaintiff slipped on an oil-like substance while working because "the presence of oil was certainly observable to [Plaintiff]. A reasonable person would consider the risk and exercise caution when working in an area with oil on the floor.").

The plaintiff, in his deposition, stated that the accident happened "in about a second and a half to two seconds," as he was walking around a pallet that had engine parts on it toward a door.

7

(#28-2 at 57.) In other words, he did not see the puddle before he stepped in it and suddenly lost his balance. Plaintiff, however, was well-aware of the potential danger of slippery spills on the floor on which he was walking. Plaintiff had cleaned the service department floor on prior occasions, and when asked at his deposition whether he had cleaned up "oils or other transmission fluids" on that floor, he answered, "Absolutely. You got to understand, there was oil and grease everywhere." *Id.* at 62. *See Stearns v. Metropolitan Life Insurance Co.*, 308 F. Supp. 3d 471, 483–84 (D. Mass. 2018) (finding landowner had no duty to warn plaintiff's employer of the presence of asbestos when the employer had equal knowledge of its presence).

There is an exception to the open and obvious rule in Massachusetts. There is a duty to remedy the danger where the defendant should have foreseen that injury was likely as a result of the open and obvious danger. *Dos Santos v. Coleta*, 987 N.E.2d 1187, 1189 (Mass. 2013) ("[A] landowner has a duty to remedy an open and obvious danger, where he has created and maintained that danger with the knowledge that lawful entrants would (and did) choose to encounter it despite the obvious risk of doing so"). This narrow exception does not apply in this case. Defendant would have no reason to anticipate that plaintiff would fall on a spill in an area known to plaintiff typically to contain oil and grease. Furthermore, the remedy, i.e., cleaning up the spill, was exactly what defendant hired plaintiff to do. *See Potvin*, 891 F.3d. at 416 ("Where, as here, the plaintiff does not propose a feasible remedy, a property owner cannot be held to answer for a putative duty to remedy.") (citing *Cohen v. Elephant Rock Beach Club, Inc.*, 63 F. Supp. 3d 130, 146 (D. Mass. 2014)). *See Callahan v. Boston Edison Co.*, 509 N.E.2d 1208, 1210 (Mass. App. Ct. 1987) ("The judge dealt generally in his instructions with the duty Edison owed to provide a reasonably safe workplace in which the plaintiff could work. The jury could reasonably assume that this precluded liability if an employee were hurt by the very hazard he

8

was required to remedy."); *Ganley v. Percuoco*, No. 004043, 2002 WL 389681, at *1–2 (Mass. Super. Jan. 7, 2002) ("[D]efendants did not owe the plaintiff a duty of reasonable care because the danger presented to the plaintiff was one that he had been hired to cure. *See Callahan v. Boston Edison*, 24 Mass. App. Ct. 950, 953 (1987). [. . .] Here, the plaintiff was hired to look at the beehive, which he knew could be dangerous. He was aware of the risks presented by the beehive. Thus, the defendants did not owe the plaintiff any duty of care."). For the above reasons, plaintiff's negligence and duty to warn claims fail; defendant violated no duty owed to plaintiff.

B. <u>Defendant is not liable under alternate theory</u>.

There was some skirmishing between the parties concerning whether a line of cases that addresses liability of an employer to the employee of a subcontractor applies here, *see* #27 at 4; #31 at 1, 3-10. In *Corsetti v. Stone*, 483 N.E.2d 793 (Mass. 1985), the SJC held that if an employer retains the right to control the work of subcontractors, including the right to initiate and maintain safety measures and programs, he must exercise that control with reasonable care for the safety of others, and is liable for damages caused by his failure to do so. *Id*. at 798. Plaintiff, while insisting that *Corsetti* does not apply to his situation, *see* #31 at 3-10, nevertheless argues that since defendant supplied the detergent that Jan-Pro used, and retained control of the order in which plaintiff's work was to be done, "[u]nder *Corsetti,* this would likely result in liability on defendant's part." (#31 at 4 n.2.) The court disagrees.

The contract between Silko and Jan-Pro provided that Jan-Pro would "provide all chemicals, equipment, labor, and supervision." (#28-3 ¶ 3.) Although Silko apparently maintained some control over cleaning the dealership, including providing certain equipment and asserting some preference over the order of cleaning, there are no allegations by plaintiff that

either the detergent provided or the schedule caused his fall. To the contrary, plaintiff stated that the materials provided by defendant effectively cleaned the service area floor. (#28-2 at 61:12-22.) Moreover, the control exercised by Silko is not the degree of control that results in liability. *See Diodato*, 1992 WL 180699, at *2 ("Because the contract specifically delegated responsibility for the safety of the project to Nova Group, and the United States did not retain supervisory control, we agree with the district court that the United States cannot be held liable on a theory of inadequate supervision.") (citing *Foley v. Rust International*, 901 F.2d 183 (1st Cir. 1990)); *see also Lopez v. Equity Office Mgmt., LLC*, 597 F. Supp. 2d 189, 194 (D. Mass. 2009) (granting summary judgment where contractor did not maintain sufficient control over work of sub-contractor to create potential liability).

V. Conclusion and Order.

For the reasons stated, it is ORDERED that Defendant Silko Motor Sales Inc.'s Motion for Summary Judgment (#26) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.

August 10, 2018 /s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge